FILED'10 JUL 21 14:08USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Timothy Mort,

        Plaintiff,

    v.

United of Omaha Life Insurace
Company,

        Defendant.

Civ. No. 09-03052-PA

ORDER

---

**PANNER, District Judge:**

    Before the court are cross-motions for summary judgment on
plaintiff's breach of contract claim.  For the following reasons
defendant's motion for summary judgment is granted and plaintiff's
motion for summary judgment is denied.

### Undisputed Facts

    Plaintiff is Timothy Mort, a former real estate agent for
RE/MAX Equity Group, Inc ("RE/MAX").  Defendant is United of Omaha
Life Insurance Company.

1 - Order

RE/MAX used insurance broker Rosenbaum Financial, LLC ("Rosenbaum") to obtain a group long-term disability policy for its employees.  As the policy holder RE/MAX paid premiums and enrolled employees with at least twelve months of active employment and $50,000 annual earnings in the "Base Plan."  The policy also allowed RE/MAX agents to enroll in the "Buy Up Plan," greatly increasing coverage to the lesser of "(a) 60% of Your Basic Monthly Earnings. . .or, (b) the maximum monthly benefit, [$7,500]."  (Stip. Stat. of Facts, ¶12.)  The policy defines "Basic Monthly Earnings" as:

> Your average gross monthly 1099 received from RE/MAX during the prior two calendar years immediately prior to the month in which Your Disability began and verified by premium received by Us, or, if employed for less than two years, Your average gross monthly 1099 received from RE/MAX for the number of months worked during that period and verified by premium received by Us . . .

> \* \* \*

> Benefits are based on an average monthly gross 1099 from RE/MAX earnings only from prior 2 calendar years. Income is updated annually each February to reflect prior 2 years gross earnings. If Less than 2 years of earnings history, income will be averaged over pro-rated number on full months.

(Stip. Stat. of Facts, ¶13 (emphasis added).)

In May 2007 plaintiff elected to participate in the "Buy Up Plan," and enrolled effective May 1, 2007.  Plaintiff's enrollment form stipulated that plaintiff's "Basic Monthly Earning" of $8,464

corresponded to a monthly disability benefit of $5,078 with premium payments of $50.63.  (Stip. Stat. of Facts, ¶20.) Defendant only used plaintiff's 2006 income to calculate benefits because plaintiff was not employed by RE/MAX in 2005.  Plaintiff paid that premium from May 2007 to February 2008.  On February 7, 2008 plaintiff received a letter from RE/MAX notifying plaintiff of the results of the policy's annual February income update. (Stip. Stat. of Facts, ¶41.)  Based on recalculated average monthly earnings of $5,961.97 from the 2006 and 2007 calendar years, plaintiff's new monthly premium of $38.62 — effective March 1, 2008 — corresponded to a monthly benefit of $3,577.18.  (Stip. Stat. of Facts, ¶41.)  On February 19, 2008, plaintiff became disabled.

Plaintiff paid the newly adjusted premium of $38.62 for March 2008.  (Stip. Stat. of Facts, ¶43.)  Because plaintiff's income for 2007 fell below the $50,000 threshold required to retain coverage, defendant later refunded the March 2008 premium. Defendant has not, however, refunded any other money to plaintiff. (Stip. Stat. of Facts, ¶54.)

In April 2008 plaintiff applied for disability benefits under the policy. The policy's "90 day elimination period" required 90 days of disability and premium payments before plaintiff became eligible for benefits.  (Stip. Stat. of Facts, ¶15.)  Because plaintiff met this requirement on May 20, 2008, defendant began

3 - Order

paying plaintiff $3,577.18 on that date.  (Stip. Stat. of Facts ¶23, 28.)  This sum is 60% of the gross monthly income of plaintiff ($5,961.97) for the two full calendar years (2006 and 2007) immediately prior to the month of the disabling incident. (Stip. Stat. of Facts, ¶27, 28.)

The parties do not dispute that plaintiff became disabled on February 19, 2008, nor that he was eligible for benefits at that time.  The sole dispute here is the monthly benefit plaintiff is entitled to under the policy.

### Standard

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 254 (1986).

### Discussion

### I.  Plaintiff is entitled to a monthly benefit of $3,577.18 under terms of the policy.

This court uses Oregon law when interpreting an insurance contract because it has jurisdiction based solely on the diversity of the parties.  See Hanna v. Plumer, 380 U.S. 460, 465, 85 S. Ct. 1136 (1965).  In Oregon, interpretation of an insurance policy is a question of law.  Holloway v. Republic Indem. Co. of Am., 341

4 - Order

Or. 642, 649 , 147 P.3d 329 (2006).  The purpose of interpreting insurance contracts is to "ascertain the intention of the parties," as evidenced by "the terms and conditions of the insurance policy."  <u>Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Oregon</u>, 313 Or. 464, 469, 836 P.2d 703 (1992).  At all times, the court must interpret the disputed term from the perspective "of the ordinary purchaser of insurance."  <u>Laird v. Allstate Ins. Co.</u>, 232 Or. App. 162, 166, 221 P.3d 780 (2009).

In interpreting a disputed phrase, the court uses an analytical framework which "first consider[s] whether the phrase in question has a plain meaning, i.e., whether it is susceptible to only one plausible interpretation."  <u>Holloway</u>, 351 Or. at 650. If the term has a "plain meaning," the interpretation ends. <u>Id.</u> If, however, "the phrase in question has more than one plausible interpretation," the court must then interpret "the phrase in . . . the broader context of the policy as a whole." <u>Id.</u> In order to be deemed plausible, "a proposed reading of the policy must, at the least, be consistent with the wording." <u>Cain Petroleum Inc. v. Zurich Am. Ins. Co.</u>, 224 Or. App. 235, 242, 197 P.3d 596 (2008).  "Conversely, if a proposed interpretation would require us to disregard any provision of the policy, it is not reasonable, as a matter of law." <u>Id.</u>

Defendant offers the only plausible interpretation of "Basic Monthly Earnings." The policy states that "Basic Monthly Earnings

means Your average gross monthly 1099 received from RE/MAX during
the prior two calendar years immediately prior to the month in
which you disability began." (Stip. Stat. of Facts, ¶13.)
Furthermore, "[b]enefits are based on an average monthly gross
1099 from RE/MAX earnings only from prior 2 calendar years." Id.
I agree with defendant that the policy unambiguously requires
benefits to be calculated based on the prior two calendar years
earnings if applicable (i.e., plaintiff worked more than two
years). (Def.'s Resp., 2.) The ordinary purchaser of insurance
would interpret the policy to mean what it clearly states.
Therefore plaintiff's "Basic Monthly Earnings" and benefits must
be calculated based on his earnings from 2006 and 2007.

Plaintiff incorrectly asserts that "the only 'Basic Monthly
Earnings' that were 'verified by premium' were plaintiff's 2006
Basic Monthly Earnings of $8,464," verified by a premium of
$50.62 on February 1. (Pl.'s Resp., 3.) This position
essentially asks the court to add nonexistent language to the
policy so that it reads: "verified by premium received by Us
[prior to the insured's disability]." But, as defendant points
out, nothing in the policy requires the verifying premium payment
be made in the same month in which the disability occurs.
(Def.'s Resp., 4.) In fact, no language in the policy states
that the premium paid in a given month verifies the benefits
plaintiff is entitled to. (Stip. Stat. of Facts Ex. 2.) Instead,

6 - Order

"[b]enefits are based on earnings only from prior 2 calendar years." Plaintiff paid a premium of $38.62 on March 1, 2008. (Stip. Stat. of Facts, ¶43.) This verified a gross monthly earnings of $5,961.97 for the two calendar years — 2006 and 2007 — immediately prior to the month of plaintiff's disability.

Because plaintiff's interpretation requires me to disregard the provisions stating that "Basic Monthly Earnings" and benefits are calculated based only on the prior two years, it is unreasonable as a matter of law. Cain, 224 Or. App. at 242. Plaintiff argues that "at the time plaintiff became disabled on February 19, 2008, he had less than two years of earnings history because his income update had not yet taken effect . . ." (Pl.'s Res., 4.)  Defendant, however, is correct in that the income update in February "does not effect the separate requirement in the Policy that benefits be based on the agent's income from the two calendar years immediately prior to the date of the disability." (Def.'s Resp., 8.) Rather, the policy explicitly states that "Benefits are based on . . . earnings only from prior two years" while in the next sentence stating that "Income is updated annually each February." (Stip. Stat. of Facts, ¶13. (emphasis added).)  Because "different words are presumed to have different meanings," Laird, 232 Or. App. at 171, I conclude that the policy provides for different means to calculate benefits and premiums.

7 - Order

Furthermore under plaintiff's interpretation, regardless of
how long plaintiff worked, if he were injured in January or
February his "Basic Monthly Earnings" would never reflect
earnings from the prior two calendar years.  Instead, plaintiff's
interpretation would base his earnings from the calendar years
two years and three years prior to the month in which his
disability began — in contrast to what the policy explicitly
requires. This would render the requirement meaningless.  Because
I "assume that parties to an insurance contract do not create
meaningless provisions," Hoffman, 313 Or. at 472, I reject
plaintiff's interpretation.

"Basic Monthly Earnings" is unambiguous because defendant
offers the only plausible interpretation.  Holloway, 351 Or. at
650.  Therefore, the interpretation ends.  Id.  However, even
when viewed in the context of the policy as a whole, defendant's
interpretation is still the only plausible interpretation.  The
policy provides for a "90-day Elimination Period," requiring 90
days of disability and premium payments from plaintiff for
benefits eligibility. (Stip. Stat. of Facts, ¶ 15.)  This means
that any insured injured in January or February would always pay
at least two premiums verifying the earnings from the prior two
calendar years. Such an interpretation is consistent with the
"core purpose of the [p]olicy: to provide benefits to a disabled
agent based on his average gross monthly income from RE/MAX in

8 - Order

the two calendar years immediately prior to the date of his
disability." (Def.'s Resp., 3.)

Plaintiff relies heavily on extrinsic evidence to give
context to both "Basic Monthly Earnings" and the intention of the
parties. (Pl.'s Mem. 12-15.)  However this evidence is
inadmissible because "extrinsic evidence . . . is not part of the
interpretation of an insurance policy." Laird, 232 Or. App. at
167.  Rather, "every contract of insurance shall be construed
according to the terms and conditions of the policy." Hoffman,
313 Or. at 469 (quoting Or. Rev. Stat. ¶ 742.016 (2010)).  Even
in the context of the policy as a whole, plaintiff's "Basic
Monthly Earnings" at the time of his injury were unambiguously
$5,961.97, entitling him to a monthly benefit of $3,577.18.

////

////

////

////

////

////

////

////

////

////

////

9 - Order

**Conclusion**

Defendant's interpretation is reasonable because it is consistent with the wording of the policy and plausible from the perspective of an ordinary purchaser of insurance.  An ordinary purchaser of insurance would find plaintiff's interpretation unreasonable, however, because it expressly contradicts the terms of the policy. Because "Basic Monthly Earnings" has only one plausible meaning, it is unambiguous and plaintiff is entitled to a monthly benefit of $3,577.18.  As such I grant defendant's motion for summary judgment [#60] and deny plaintiff's motion for summary judgment [#56].

IT IS SO ORDERED.

DATED this 2/ day of July, 2010.

OWEN M. PANNER

U.S. DISTRICT JUDGE

10 - Order